IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | | |
|---|---|---|
| IN RE: | FREDERICK M. JEFFERSON and<br>JANICE R. JEFFERSON | CASE NO.: 4:09-BK-13341<br>CHAPTER 13 |

FREDERICK M. JEFFERSON and                                          PLAINTIFFS
JANICE R. JEFFERSON

VS.                                     AP NO.: 4:14-ap-01050

ARKANSAS DEPARTMENT OF FINANCE                                      DEFENDANT
AND ADMINISTRATION

| | | |
|---|---|---|
| IN RE: | FREDERICK M. JEFFERSON and<br>JANICE R. JEFFERSON | CASE NO.: 4:13-BK-13202<br>CHAPTER 13 |

FREDRICK JEFFERSON and                                              PLAINTIFFS
JANICE R. JEFFERSON

VS.                                     AP NO.: 4:14-ap-01051

ARKANSAS DEPARTMENT OF FINANCE                                      DEFENDANT
AND ADMINISTRATION

## ORDER GRANTING MOTIONS TO DISMISS

Now before the Court are the above-referenced adversary proceedings brought by Plaintiffs and Debtors Frederick and Janice Jefferson against Defendant Arkansas Department of Finance and Administration. The Defendant moves to dismiss the Plaintiffs' Complaints for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The Plaintiffs filed responses, and the Court took this matter under advisement. The Court has reviewed the Defendant's Motions to Dismiss,

Entered On Docket: 12/11/2014

the Plaintiffs' responses, the parties' respective briefs, and the applicable law. For the reasons stated below, Defendant's Motions to Dismiss are granted.

## FACTS

Frederick and Janice Jefferson ("**Debtors**"), filed for bankruptcy under chapter 13 on May 12, 2009, case no. 09-13341 (the "**First Case**"). The Arkansas Department of Finance & Administration ("**DF&A**") filed a proof of claim ("**Claim 1**") in the First Case for a total of $32,332.94 due for unpaid taxes from the years 2001-2005 and 2007. Specifically, Claim 1 contained a $32,031.64 secured claim for the tax years 2001-2005, a $211.35 unsecured priority claim, and a $89.95 unsecured non-priority claim. The unsecured claims appear to be from the tax year 2007. The initial plan in that case was confirmed on February 11, 2010, and several confirmed modifications followed. Although the Debtors did not specifically provide for the DF&A's claims in their plan, the Order Confirming Chapter 13 Plan provides:

> Whenever the plan confirmed by this Order refers to the debt, debts, claim or claims of creditors, such reference shall be construed to mean allowed claim or allowed claims. The total amount of an allowed claim shall be the amount stated on a proof of claim properly filed by or on behalf of such creditor, unless the Court determines a different amount following the filing of an objection to such claim.

The Debtors did not object to Claim 1. Eventually the First Case was dismissed due to the Debtors being unable to complete the plan within 60 months. According to the Trustee's Final Report and Account (Dkt. #118), filed June 26, 2013, the DF&A's secured claim of $32,031.64 was paid in its entirety, but the priority and unsecured claims totaling $301.30 were not.

2

The Debtors filed a new chapter 13 case on June 3, 2013, case no. 13-13202 (the "**Second Case**").[1] The DF&A filed a claim in the amount of $351.24 for 2007 taxes ("**Claim 2**"). The plan was confirmed on August 29, 2013, providing for a $212.00 priority claim for the 2007 taxes to be paid to the DF&A (Dkt. #5, 20, 26). On January 28, 2014, the Debtors moved to reopen the First Case, seeking to object to Claim 1 and eventually consolidate the two cases.[2] The First Case was reopened on March 18, 2014, and the Debtors filed adversary proceedings in both cases objecting to Claim 1 and Claim 2, and seeking an offset of the 2007 tax liability. Specifically, the Debtors' complaints allege that the Trustee made disbursements in the amount of $32,031.64 during the First Case to the DF&A; that after the First Case was dismissed, the Debtors filed Individual Income Tax Returns for the years 2001-2005; that there was no tax liability due based on those returns; and that the DF&A has refused to refund the money paid to it during the First Case. The Debtors' objection states the secured portion of $32,031.64 should be disallowed pursuant to Fed. R. Bankr. P. 3007(b); the $32,031.64 should be considered property of the estate pursuant to § 541; the Debtors should be allowed an offset for the $211.35 claim and $89.95 claim the DF&A lists in Claim 1 for the 2007 taxes; and the remaining $31,730.34 should

---

[1] The First Case lists the Debtors' names as Frederick and Janice Jefferson, while the Second Case lists the Debtors' names as Fredrick and Janice Jefferson. The Court was unable to determine whether Mr. Jefferson spells his first name Frederick or Fredrick.

[2] The Chapter 13 Trustee filed a response to the Debtors' Motion to Reopen, and the motion and response were scheduled for hearing. However, prior to the hearing, the Court was notified that the Debtor and Trustee had settled, and subsequently, an order granting the motion was entered.

be returned to the estate. Additionally, the adversary proceeding No. 14-1051 requests Claim 2 be disallowed.

In the DF&A's *Brief in Support of Motion to Dismiss* it alleges the following facts regarding the Debtors' tax history:

- 2001: Janice Jefferson failed to timely file an individual income tax return, which was due May 15, 2002. Notice of a proposed assessment against a nonfiler was issued in 2004 pursuant to § 26-18-403 for the amount of $4,932.57. The assessment was not administratively challenged, and a final assessment was entered against her on September 9, 2004. The DF&A then filed a certificate of indebtedness against Janice Jefferson. Janice Jefferson was statutorily barred from filing for a refund on May 15, 2005.

- 2002: Janice Jefferson failed to timely file an individual income tax return, which was due May 15, 2003. Notice of proposed assessment against a nonfiler was issued on August 10, 2006. The assessment was not administratively challenged, and a final assessment for the sum of $8,020.42 was entered against her on October 5, 2006. Janice Jefferson was statutorily barred from filing for a refund on May 15, 2006.

- 2003: Janice Jefferson failed to timely file an individual income tax return, which was due April 15, 2004. Notice of proposed assessment against a nonfiler was issued on August 10, 2006. The assessment was not administratively challenged, and a final assessment for the sum of $10,271.81 was entered against her on October

5, 2006. Janice Jefferson was statutorily barred from filing for a refund on April 15, 2007.

- 2004: Frederick Jefferson filed a tax due return for 2004 tax year on April 12, 2005. A notice of proposed assessment was issued against him on June 17, 2005. He did not administratively challenge the assessment, and a final assessment was issued against him on August 11, 2005. He did not seek judicial relief for the assessment, and the DF&A filed a tax lien against him on July 13, 2006. Frederick Jefferson was statutorily barred from filing for a refund on April 15, 2008.

- 2005: Frederick Jefferson filed a refund return for tax year 2005 on February 3, 2006, but the IRS changed his taxable income after the return was filed. The DF&A received notice of this change in 2008, but did not receive an amended return from Jefferson. On January 8, 2009, the DF&A issued a notice of proposed assessment for the additional tax due after making the IRS adjustments. Frederick Jefferson did not administratively challenge the assessment, and a final assessment of $626.93 and demand for payment was issued on April 2, 2009. Frederick Jefferson was statutorily barred from filing for a refund on April 15, 2009.

- 2007: Frederick Jefferson filed a tax return on June 20, 2009, but did not pay the tax. A notice of proposed assessment was issued on September 19, 2009. He did not contest the assessment, and a final assessment and demand for payment was entered on December 10, 2009. The DF&A does not indicate when Frederick Jefferson would be statutorily barred from filing for a refund, but it appears he would have been barred on April 15, 2011.

5

According to the DF&A, no formal request for a refund has been made for any of the tax liabilities from 2001-2005 listed above from either the Debtors or the Trustee.

## LEGAL STANDARD

A motion under Fed. R. Civ. P. 12(b)(1), made applicable to these proceedings by Fed. R. Bankr. P. 7012(b), is used to dismiss a claim for lack of subject-matter jurisdiction. When considering such a motion, the court must "accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." *Cmty. Fin. Grp., Inc. v. Republic of Kenya*, 663 F.3d 977, 980 (8th Cir. 2011). The standard for dismissal under Fed. R. Civ. P. 12(b)(6), made applicable to these proceedings by Fed. R. Bankr. P. 7012(b), is as follows:

> [To survive a motion to dismiss pursuant to Rule 12(b)(6), as interpreted by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)], a plaintiff [must] plead facts sufficient to 'raise a right to relief above the speculative level.' 550 U.S. at 555. While the pleadings need not show relief is probable, they must show the plaintiff's claims are 'plausible.' *Id.* at 556; *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Iqbal,* 129 S.Ct. at 1949. Courts must accept a plaintiff's specific factual allegations as true but are not required to accept a plaintiff's legal conclusions. *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955. Further, documents attached to or incorporated within a complaint are considered part of the pleadings, and courts may look at such documents 'for all purposes,' Fed. R. Civ. P. 10(c), including to determine whether a plaintiff has stated a plausible claim, *see M.M. Silta v. Cleveland Cliffs, Inc.,* 616 F.3d 872, 876 (8th Cir. 2010) (reviewing the language of a contract included with the pleadings to gauge the sufficiency of a complaint); *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.,* 406 F.3d 1052, 1063 n. 3 (8th Cir. 2005).

*Brown v. Medtronic, Inc*., 628 F.3d 451, 459-60 (8th Cir. 2010). Additionally,

> [w]hen a dispositive issue of law precludes a plaintiff from being entitled to relief regardless of the allegations of fact, the plaintiff might prove, Rule 12(b)(6) authorizes a court to dismiss that plaintiff's claims. *Neitzke v. Williams* 490 U.S. 319, 326-327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In order to streamline litigation and dispense with needless discovery and fact finding, courts are required to dismiss legal claims that are destined to fail regardless of whether they are nearly viable. *Neitzke*, 490 U.S. at 326-27 (stating "[n]othing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. . . . [A] claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.").

*Ray v. American Airlines, Inc.*, 2008 WL 3992644, at *3 (W.D. Ark. 2008).

## DISCUSSION

The DF&A moves to dismiss the adversary proceedings pursuant to Fed. R. Civ. P. 12(b)(1) (lack of jurisdiction) and 12(b)(6) (failure to state a claim for relief) arguing that because the Debtors seek monetary relief from the State of Arkansas, the doctrine of sovereign immunity protects the DF&A from suit; that subject matter jurisdiction is lacking pursuant to 11 U.S.C § 505, the Tax Injunction Act 28 U.S.C. § 1341 and Ark. Code Ann. § 26-18-101; and that the Debtors' complaint is barred by *res judicata* because the Debtors made no objection to Claim 1 in the First Case, proposed to pay the DF&A its priority claim in the Second Case, and both their chapter 13 plans were confirmed by court order. The DF&A also claims that Debtors fail to state a claim on which relief may be granted because the Debtors' request for a refund would be statutorily barred by state law.

The Debtors reply that the funds paid to the DF&A were not a result of withholding, offset, or garnishment, but paid pursuant to Claim 1, and as a result, this is a legal or equitable claim paid to the DF&A in reliance on an incorrect claim. The Debtors ask the

7

Court to reconsider the DF&A's claims and make a determination of what tax liability was due for those years, and allow the remainder to be put back into the estate.

The Motions to Dismiss raise three legal issues the Court must analyze in order to determine whether or not to dismiss the Complaints: (1) whether the relief sought by Debtors is barred by the doctrine of sovereign immunity; (2) whether the Court has subject matter jurisdiction; and (3) whether the Debtors are barred by the doctrine of *res judicata* from challenging the amount paid to DF&A on its proof of claim filed in the First Case or challenging the DF&A's claim in the Second Case. Because 11 U.S.C. § 502(j) provides a limited exception to the *res judicata* effect normally afforded confirmed plans, the Court must also determine whether the Debtors have stated cause for reconsideration of the DF&A's claims as required by 11 U.S.C. § 502(j).

As described below, the Court finds that the Complaints are not barred by sovereign immunity but the Court has only limited jurisdiction to determine the Debtors' tax liability in order to offset taxes still owed. However, because the Debtors have not stated a claim for cause under § 502(j), the Court finds the Debtors' Complaints must be dismissed.

### A.   Sovereign Immunity

The DF&A claims that sovereign immunity prohibits the Debtors from seeking monetary relief from the state or federal government, and a claim seeking to obtain relief for a tax refund in the manner the Debtors have requested would result in monetary damages against the state. Specifically, the DF&A claims that 11 U.S.C. § 106(5) gives it immunity from this suit. The Debtors respond that they are not specifically seeking a

8

refund, but that 11 U.S.C. § 505(a) clearly vests this court with jurisdiction to determine the Debtors' tax liability and requests such a determination be made.

Section 106 states that "sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Sections . . . 502, . . . 505, . . . 542, . . ." as well as stating:

> **(b)** A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106. Section 502 addresses objections to claims and the court's ability to determine the extent of such claims. Section 505 addresses the court's ability to determine tax liability issues, stating:

> **(a)(1)** Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
> **(2)** The court may not so determine—
>> **(A)** the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title.
>> **(B)** any right of the estate to a tax refund, before the earlier of—
>>> **(i)** 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
>>> **(ii)** a determination by such governmental unit of such request; or
>>
>> **(C)** the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired.

9

11 U.S.C. § 505. According to these statutes, a governmental unit that has filed a proof of claim has waived its immunity from suit pursuant to § 106. In addition, § 505(a)(2)(B)(i-ii) allows the court to make tax refund determinations in certain instances. In this case, the DF&A filed a proof of claim, and the Debtors essentially request a determination of both tax liability and any refund they would be due, which are both concepts clearly contemplated by § 106 and § 505. Accordingly, the Court's consideration of the Plaintiffs' Complaints does not violate the State's sovereign immunity.

**B.    Subject Matter Jurisdiction**

The DF&A asserts that the Debtors' Complaints should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because: (1) the Tax Injunction Act, 28 U.S.C. § 1341 deprives this court of the ability to restrict, enjoin, or restrain state taxation; and (2) the Debtors have not met the requirements of 11 U.S.C. § 505. The Debtors reply that 11 U.S.C. § 502(j) allows a claim to be reconsidered for cause, that there exists no such deadline for filing such an objection, and they seek reconsideration of an allowed claim, not a tax refund, and accordingly, this Court has subject matter jurisdiction.

To determine whether the Court has subject matter jurisdiction, the Court must determine whether the Tax Injunction Act would be violated by the Court's exercise of jurisdiction and whether it has jurisdiction under § 505.

**1.  Tax Injunction Act**

The Tax Injunction Act, 28 U.S.C. § 1341, states "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The

Tax Injunction Act is a "vehicle to limit drastically federal district court jurisdiction to interfere with so important a [state] concern as the collection of taxes." *In re Eveleth Mines, L.L.C.*, 318 B.R. 682, 690 (B.A.P. 8th Cir. 2004). Once triggered, "the federal court may only exercise its jurisdiction if it finds that a plain, speedy and efficient remedy cannot be had in the state court." *Id.* (citations omitted). This case cites a Ninth Circuit Court of Appeals case stating "the general dictates of the [Tax Injunction] Act do not defeat the specific powers Congress has bestowed on the federal courts under the Bankruptcy Code." *Id.* (citations omitted). Ultimately, what was sought in this case would have resulted in the court ordering the state to restrain how it collected and assessed certain taxes from an entity, and in order for the court to do so, the movant would have to prove the taxing procedure was not plain, speedy, and efficient. *Id.* at 692.

In this case, any relief the Debtors may be afforded will be obtained through § 505, a power Congress specifically granted to the bankruptcy courts. Making such a determination would not enjoin, suspend, or restrain the levy or collection of taxes by the DF&A,[3] and therefore, such a determination does not violate the Tax Injunction Act.

**2. Section 505 Compliance**

The bankruptcy code allows the court to determine the right of the estate to a tax refund only when either 120 days have passed since the trustee has properly requested a

---

[3] In seeking injunction, suspension, or restriction, the burden of proof would be on the Debtors to show state procedure is not plain, speedy, or efficient. *See In re Eveleth Mines, L.L.C.*, 318 B.R. 682, 690 (B.A.P. 8th Cir. 2004).

11

refund from the government, or a determination by the respective government unit of a refund request has occurred. 11 U.S.C. § 505(a)(2)(B).[4]

The Eighth Circuit Court of Appeals contemplated the issue of subject matter jurisdiction over a debtor's objection to an IRS claim in *U.S. v. Kearns*, 177 F.3d 706 (1999). In *Kearns*, the court addressed a debtor's claim for an offset due to deductions he thought he was entitled to receive but had not been calculated into the claim. 177 F.3d at 708. The IRS argued that the debtor had failed to file for a refund in the proper year, and was barred by the statute of limitations from seeking a refund; the IRS also argued that the debtor's failure to timely file for a refund divested the court of subject matter jurisdiction pursuant to § 505(a)(2). The court held that

> [w]hen the claims of the IRS and the debtor involve the same tax liabilities, it is 'without purpose and irrational' to deny jurisdiction over refunds absent a formal request by the debtor, (citation omitted), it would be doubly so to apply a statutory bar to the debtor's claim for determination of tax liability.

*Id.* at 711. Furthermore, the court stated that administrative remedies will continue to protect the IRS from having to expend resources in litigation, but when the IRS had already filed a proof of claim it had "already committed itself to expending resources to resolve the taxpayer's liability for a particular year." *Id.*

The *Kearns* court cited to several other cases, one of which stated "§ 505 'permits a debtor to dispense with the IRS's requirements of filing a claim for a refund when the refund is sought as an offset or counterclaim to a proof of claim filed by the tax authority.'"

---

[4] Neither party raised the Chapter 13 Trustee's failure to file for a refund.

*Id.* (citing *In re Dunhill Medical, Inc.*, 1996 WL 354696, 1 (Bankr. D.N.J. March 27, 1996)). The Western District of Missouri discussed *Kearns* in *In re Farmland Industries, Inc.*, stating

> The *Kearns* court ultimately determined that § 505(a)(2)(B) did not restrict the authority of the bankruptcy court to consider the debtor's request, but it did so by carving out a narrow exception for requests of refunds where the [']refund is sought as an offset or counterclaim to a proof of claim by the IRS….['] It did not do so by rejecting the definition of [']properly['] as [']in accordance with the requirements of applicable taxing authority.[']"

336 B.R. 415, 418 (2005).

The DF&A alleges that the Debtors did not file for refunds for the tax years 2001-2005. The Debtors claim in their initial complaint that they are seeking an offset for the 2007 tax claim amounts listed in Claim 1 and Claim 2 (*i.e.*, they seek to offset the refund from 2001-2005 tax years against the claims for 2007 taxes due) in addition to a refund[5] of additional amounts paid on Claim 1. The Debtors did not comply with the requirements of § 505 in that no claim for refund has been made or determined by the respective government unit; accordingly, the Court only has limited jurisdiction under the exception carved out by the Eighth Circuit in *Kearns* to determine if the Debtors are entitled to an offset for taxes currently claimed (*i.e.*, Claim 2). However, the Court does not have jurisdiction to determine if the Debtors are otherwise entitled to a refund for the amounts already paid on Claim 1.

---

[5] Although the Debtors emphatically argue they do not seek a "refund," they in fact seek the DF&A to return the payments it received to the Debtors' bankruptcy estate. This amounts to a "refund" no matter what words the Debtors use to describe it.

C.     **Failure to State a Claim for Relief**

Having determined that the Court lacks jurisdiction to grant Debtors any sort of refund for amounts paid on Claim 1, the Court must now determine whether the Debtors state a claim for relief for offset. The Debtors ask the Court to reconsider Claim 1 (*i.e.*, find that the Debtors did not owe the DF&A $32,031.64 paid to DF&A on Claim 1) and then determine that the Debtors are entitled to an offset for the taxes due on Claim 2 ($351.24). The DF&A argues that the Debtors' claim for offset is barred by *res judicata* because Debtors made no objection to Claim 1 in the First Case, and the Court entered an order confirming their chapter 13 plan. The DF&A also argues that the Debtors fail to state a claim on which relief may be granted because their request for a refund is statutorily barred by state law and was barred prior to filing their first bankruptcy.[6] The Debtors respond that they object to the claims pursuant to Fed. R. Bankr. P. 3007(b), which does not restrict the time when an objection to a claim can be made, and ask the Court to reconsider Claim 1 paid in the First Case pursuant to 11 U.S.C. § 502(j) which provides an exception to the *res judicata* effect normally afforded confirmed plans.

The Eighth Circuit Bankruptcy Appellate Panel has held that "[a]n unappealed, confirmed plan is *res judicata,* and its terms are not subject to collateral attack." *In re*

---

[6] The DF&A cites to Ark. Code Ann. §26-18-306(i)(2) which states,

[a]ny tax payer who fails to file a return, underreports his or her income by twenty-five percent (25%) or more, or fails to notify the director of any change or correction by the Internal Revenue Service in the taxpayer's taxable income shall not be entitled to file an amended return or verified claim for credit or refund after the expiration of three (3) years from the date the original return or notification of change was originally due.

14

*Russell*, 386 B.R. 229, 231 (B.A.P. 8th Cir. 2008). Additionally, a "debtor who has an opportunity to object to a creditor's claim prior to confirmation but fails to do so waives the right to object to the claim and is bound by the plan." *Id.* Stated by a different circuit, "[a]s a general rule, the failure to raise an objection at the confirmation hearing or to appeal from the order of confirmation should preclude attack on the plan or any provision therein as illegal in a subsequent proceeding." *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000).

> However, the Bankruptcy Court in Missouri stated:
>
> Although the doctrine of *res judicata* was meant to prevent parties from revisiting issues which were, or could have been, litigated at the time that the plan was originally confirmed, (citation omitted), § 502(j) itself carves out an exception to the *res judicata* effect of § 1327 and exists as a separate and independent authority for reducing claims based on the equities of the case."

*In re Ross*, 373 B.R. 656, 660 (Bankr. W.D. Mo. 2007). Furthermore, "Bankruptcy Rule 3007 governs the procedure for filing objections to claims and does not provide any period of limitation within which an objection must be made." *In re Bancroft Cap Co.*, 182 B.R. 538, 539 (Bankr. E.D. Ark. 1995).

In this case, not only was a chapter 13 plan confirmed, almost all of the DF&A's claim was paid pursuant to the Debtor's confirmed plan, and the case was later dismissed. Accordingly, Debtors' claim for an offset is barred by *res judicata* unless the Court can reconsider the claim under § 502(j). In order for the Court to reconsider the claim, the Debtors must have pled sufficient cause for reconsideration. As this Court stated in *Moffitt*,

> it is widely held that § 502(j) creates an exception to the *res judicata* effect normally afforded a confirmed plan under 11 U.S.C. § 1327. *See e.g., In re Adkins,* 425 F.3d 296, 308 (6th Cir.2005) ("Reconsideration under § 502(j)

15

> can occur even after a plan is confirmed."); *In re Gomez,* 250 B.R. 397, 400 (Bankr.M.D.Fla.1999) (holding that § 502(j) creates a narrow exception to the *res judicata* effect of § 1327 that allows reconsideration after confirmation if the debtor can establish sufficient cause).

408 B.R. 249, 255-56 (Bankr. E.D. Ark. 2009). In *Moffitt,* fees were added to the debtors' mortgage between the time the proof of claim was filed and their case closed; they reopened their case, sought discovery and learned that undisclosed fees had been added to their mortgage. Under these facts, the Court found that the Moffitts had stated facts showing "cause" as required by § 502(j) to reconsider the creditor's claim. This Court explained:

> [t]he Trustee ultimately paid ASC the amount requested in Everhome's September 7, 2005 Amended Proof of Claim ($8,535.79). However, what the Moffitts complain of is the $1,208.04 of fees and charges that were added to the Moffitts' mortgage account between the time the Amended Proof of Claim was filed and their case was closed. The Moffitts did not learn of these fees and charges until after the closing of their case, when they reopened their case and filed the QWR with ASC and obtained a breakdown of what fees and charges had been charged to their account. Taking these allegations as true, ASC in fact charged the Moffitts fees during the case without disclosing such fees to the Court or the Moffitts, and then included those fees in a final payoff. The Moffitts are entitled to an explanation of the additional fees and costs allegedly accrued during their bankruptcy case and added to their payoff without their knowledge. Accordingly, the Moffitts have alleged sufficient cause to reconsider the unappealed March 27, 2006 order allowing ASC's claim, and have therefore stated a claim for relief under § 502(j) with respect to claim one.

*Id*. As illustrated by the facts in *Moffitt*, § 502(j) is a narrow exception to the doctrine of *res judicata* that allows Courts to provide an equitable remedy where there has been a wrong that cannot be remedied otherwise.

Unlike the facts of *Moffitt*, the Debtors in this case have not adequately stated a claim for cause to allow the Court to reconsider Claim 1 under § 502(j). The facts which support a finding of cause are usually outside a debtor's control – for instance, the Moffitts

16

did not have the information they needed to object to the claim because the creditor charged undisclosed fees to their mortgage. The Moffitts did not create their own problem. In this case, DF&A filed a claim, and the Debtors did not object to it. The Court entered an order confirming plan, the Debtors made substantial plan payments, and the Debtors paid taxes under the confirmed plan. While the Debtors were making their plan payments and those payments were made to the DF&A, the Debtors did not know the amount of their tax liability because they had not filed tax returns for those years. The Debtors, many years later and after the statutory time to do so had run, filed their tax returns and realized they paid more than they actually owed. That Debtors did not follow the law required of all citizens and consequently paid more than they owed is not a statement of an equitable cause of action. One cannot ignore the tax laws and then use the bankruptcy code to remedy a disappointing result. Courts use § 502(j) to avoid injustice. These facts do not state cause under § 502(j) to reconsider Claim 1 and allow an offset for Claim 2.

Likewise, the Debtors fail to state a claim for relief with respect to their objection to the DF&A's Claim 2 filed in the Second Case. Their confirmed plan proposes to pay the DF&A a priority tax claim for the 2007 tax year, although in a lower amount than that claimed by the DF&A in Claim 2. Nonetheless, the adversary proceeding filed by Debtors objects to that claim based on the same facts alleged in their motion to reconsider Claim 1. The Debtors provide no other basis for objecting to Claim 2 under 11 U.S.C. § 502(b), and accordingly, their adversary proceeding fails to state a claim upon which relief may be granted. *See In re Dove-Nation*, 318 B.R. 147, 153 (B.A.P. 8th Cir. 2004) ("The Bankruptcy Code could not be more clear: a claim, proof of which is filed, shall be allowed

unless it falls within one of the exceptions set forth in Section 502(b). The Claimant filed proofs of claims and the Debtor failed to allege much less present any evidence that the claims fell within one of the exceptions.").

For these reasons, the Court finds the Debtors did not plead sufficient cause pursuant to § 502(b) or § 502(j) to reconsider Claim 1 previously paid in the First Case or Claim 2 which they object to in the Second case, and accordingly, their Complaints are dismissed.

## CONCLUSION

The Court is not barred by the doctrine of sovereign immunity from deciding the Complaints, but has limited jurisdiction under 11 U.S.C. § 505 and the Eighth Circuit's decision in *Kearns*. The Court only has jurisdiction to decide whether the Debtors are entitled to an offset for the DF&A's claim in their current bankruptcy case; the Court does not have jurisdiction to order a refund be paid to the Debtors' bankruptcy estate. However, because the Debtors fail to state a claim for relief to reconsider the DF&A's previously paid claim or a basis for objecting to the DF&A's current claim, the complaints must be dismissed. Therefore, it is hereby

**ORDERED** that Defendant's *Motion to Dismiss* (Dkt. #7 in 4:14-ap-1050) is hereby **GRANTED**; and it is further

**ORDERED** that Defendant's *Motion to Dismiss* (Dkt. #5 in 4:14-ap-1051) is hereby **GRANTED.**

**IT IS SO ORDERED.**

*Audrey R. Evans*
Audrey R. Evans
United States Bankruptcy Judge
Dated: 12/11/2014